**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RBX CAPITAL, LP,<br>    *Plaintiff*,<br>  v.<br>XORAX FAMILY TRUST, et al.,<br>    *Defendants*. | CIVIL ACTION<br>NO. 21-3774 |

**PAPPERT, J.**                          **March 25, 2022**

## MEMORANDUM

  Plaintiff RBx Capital, LP sued Xorax Family Trust, Zeeshan and Rehan Saeed for breach of contract, conversion and unjust enrichment after it allegedly wired $275,000 to Xorax to invest in a company called Sniper. Defendants move to dismiss all claims against Rehan and Zeeshan Saheed and to dismiss the conversion claim against Xorax. The Court grants their motion.

**I**

  Zeeshan Saeed and non-party Dr. Razha Bokhari knew each other as executives and board members of a company otherwise unrelated to this case. (Compl., ECF 1, ¶ 10.) Dr. Bokhari, who resides in Villanova, Pennsylvania, is RBx's managing partner. (*Id.* ¶ 6.) RBX's principal place of business is in Philadelphia. (*Id.* ¶ 1.) Zeeshan and his brother Reshan Saeed reside in Missisauga, Ontario, Canada. (*Id.* ¶¶ 3-5.) RBx alleges they and Xorax, a Canadian investment trust, "repeatedly solicited and pressured Dr. Bokhari and RBx" for a variety of investments. (*Id.* ¶¶ 2, 13.) The Complaint does not allege facts to describe any relationship between Xorax and the Saeeds.

  RBx specifically alleges "Defendants" leveraged Zeeshan's business relationship

with Dr. Bokhari and their knowledge of his liquidity in a "scheme" to ask him and RBx to invest in Xorax. (*Id.* ¶¶ 11-12.) In August 2020, they "demanded" RBx "wire $275,000 to Xorax for an investment in . . . Sniper." (*Id.* ¶ 15.) Defendants made "lofty promises of returns" but "never provided any concrete prospectus or other documents" about Sniper to RBx. (*Id.* ¶ 16.) On August 31, 2020, Dr. Bokhari wired $275,000 to Xorax because of his "existing business relationship" with Zeeshan. (*Id.* ¶ 17.) Since then Defendants have not provided RBx with information about its investment despite informal requests for updates. (*Id.* ¶ 18-19.)

On July 7, 2021, RBx sent Defendants a demand letter requesting the return of its funds by July 14. (*Id.* ¶ 20.) In the absence of a response, RBx filed this action in the Philadelphia County Court of Common Pleas on July 15, 2021. (Notice of Removal, ECF 1, ¶ 1.) Defendants removed the case to this Court based on diversity jurisdiction.

II

A

Defendants argue RBx's claims against Rehan Saeed must be dismissed under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. The Court's jurisdiction is proper under the Fourteenth Amendment's Due Process Clause only if Rehan has "minimum contacts" with this forum, ensuring "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). His contacts must be shown with "reasonable particularity." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation and quotation omitted). RBx bears the burden of establishing personal

jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001)). In the absence of an evidentiary hearing, RBx "need only establish a prima facie case of personal jurisdiction and . . . is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Because Defendants raise a challenge under Rule 12(b)(2), RBx may meet its burden with sworn affidavits or other competent evidence. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).

Personal jurisdiction may be general or specific. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). The Court can only exercise general jurisdiction over Rehan Saeed if he has "continuous and systematic" contacts with the Eastern District of Pennsylvania. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). RBx makes no allegations to that effect, and there is no basis for such a finding.

For there to be specific jurisdiction, the Court must consider whether: (1) Rehan purposefully directed his activities at this district; (2) the litigation arose out of or related to at least one of those activities; and (3) if the other two elements are met, whether maintenance of the suit against him comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citations omitted). He need not have physically entered this district. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). But his contacts with this forum must amount to "a deliberate targeting" and must be more than "unilateral activity of those who claim some relationship with" him. *D'Jamoos*, 566 F.3d at 103.

For RBx's breach of contract claim, Rehan's forum contacts must have been "instrumental in either the formation of the contract or its breach." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 130 (3d Cir. 2020). For its conversion claim, Rehan must have "expressly aimed" his "tortious conduct at the forum" to make it the tortious activity's "focal point." *Id*. And for its unjust enrichment claim, RBx must show Rehan "benefited enough from the forum state's laws to make the burden of facing litigation there proportional to those benefits." *Id*.

RBx contends the Court can exercise personal jurisdiction over each Defendant, including Rehan, because each "took part in soliciting an investment from RBx, a Philadelphia entity," and each "caused injury to RBx within Pennsylvania." (Pl.'s Opp'n Mem., ECF 9, at 3.) However, the Complaint's general allegation that "Defendants demanded that RBx . . . wire" funds from an unspecified location to Xorax – a Canadian investment trust – for an investment in Sniper – a company with an unspecified place of business – is not sufficient to establish the Court's personal jurisdiction over Rehan. (Compl. ¶ 14.) RBx alleges "Defendants" "solicited and pressured" it and Dr. Bokhari, but it does not specifically allege that in doing so, Rehan was ever present in this district or that he called, transmitted documents to or accepted money from RBX here. (*Id*. ¶ 13.)

In its response to Defendants' motion, RBx characterizes Rehan as Xorax's "agent" and maintains he "did all the leg work and follow up to secure the funds" and "knowingly and purposefully solicited RBx's funds via e-mail and text messages directed to Dr. Bokhari, who is a resident of Pennsylvania . . . ." (Pl.'s Opp'n Mem. at 2, 4-5.) But RBx cannot meet its burden to overcome Rehan's personal jurisdiction

4

defense with new allegations in an opposition brief without "sworn affidavits or other competent evidence," none of which are provided with its response to Defendants' motion. *See Metcalfe*, 566 F.3d at 330.

III

To satisfy Federal Rule of Civil Procedure 12(b)(6), RBx's Complaint must include facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the facts pled "allow [ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Well-pleaded factual allegations are presumed to be true and construed in the light most favorable to the plaintiff. *Id.* at 679; *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Conclusory assertions of fact and legal conclusions are not. *See Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

A

To proceed with its breach of contract claim under Pennsylvania law,[1] RBx must allege enough facts to show: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *Ocasio v. Prison Health Servs.*, 979 A.2d 352, 355 (Pa. Super. Ct. 2009). "While not every term of a contract must be stated in complete detail, every element must be

---

[1] No party argues RBx's claims are governed by anything other than Pennsylvania law.

5

specifically pleaded." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  For a contract to be enforceable, the nature and extent of the mutual obligations must be certain, and the parties must have agreed on the material and necessary details of their bargain.  *Peck v. Del. Cnty. Bd. of Prison Inspectors*, 814 A.2d 185, 191 (Pa. 2002) (citing *Lombardo v. Gasparini Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956)).  The essential terms, including "time or manner of performance, or price or consideration" must "be set forth with sufficient clarity."  *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006); see also *Bair v. Manor Care of Elizabethtown, PA, LLC*, 108 A.3d 94, 98 (Pa. Super. Ct. 2015) (declining to find a contract where "it lacked essential terms such as the names of the contracting parties").

RBx alleges it "orally agreed" with "Defendants" "on or before August 20th" that it would wire $275,000 to Xorax to invest in Sniper in exchange for a "promised" return on its investment.  (Compl. ¶¶ 24-25.)  It maintains "Zeeshan Saeed promised to provide specific information regarding the investment once effectuated," but RBx has not received information about its investment or any returns since it wired the funds to Xorax "on or about August 31."  (*Id.* ¶¶ 26-28.)  As a result, it claims it has suffered $275,000 in damages.  (*Id.* ¶¶ 29.)

RBx does not allege enough of the purported oral contract's essential terms.  Specifically, the Complaint does not allege what "specific information" it expected to receive from Zeeshan.  It does not allege any details about its expected return or the "time or manner" in which Xorax was obligated to deliver that return.  And RBx's vague references to "Defendants" leave unclear whether the purported contract was between RBx and Xorax alone or whether Zeeshan or Rehan Saeed also were parties to the

6

agreement. The Complaint's sparse details about the essential terms of the alleged agreement between RBx and Defendants are too hazy to "nudge" the breach of contract claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

B

RBx also asserts a claim against Defendants for conversion: the "deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification." *Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (citation and internal quotation omitted). "Money may be the subject of a conversion only where the plaintiff had a property interest in the money at the time of the alleged conversion." *Kia v. Imaging Scis. Int'l, Inc.*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010).

Pennsylvania's gist of the action doctrine bars tort claims – including conversion – against contracting parties where they are, "in actuality, a claim against the party for breach of its contractual obligations." *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 53 (Pa. 2014). Defendants argue the doctrine requires dismissal of RBx's conversion claims. (Defs.' Mem., ECF 8-1, at 10-12.) When wielding the doctrine to dismiss tort claims" before discovery, a court should "exercise caution" because the question of "[w]hether a duty arises under a contract is a fact-intensive inquiry . . . ." *Zaftr Inc. v. Lawrence*, No. 21-2177, 2021 WL 4989769, at *5 (E.D. Pa. Oct. 27, 2021). The Court would not dismiss Count II based on the gist of the action even if RBx had stated a breach of contract claim because the Complaint leaves unclear the extent of any overlap between RBx's contract and conversion claims.[2]

---

[2] If the conduct underlying RBx's conversion claims is ultimately shown to be governed by a valid contract, RBx will not be able to recover in tort.

RBx alleges Defendants unlawfully converted its funds after Dr. Bokhari "relented" to pressure from Defendants and "wired the requested $275,000 to Xorax . . . ." (Compl. ¶ 17.)  However, it does not allege Xorax lacked permission to hold its investment.  Nor does RBx allege Zehan (or Rehan) Saeed ever possessed, used or otherwise interfered with its money.  The Complaint's allegations about what RBx expected Xorax to do when it took possession of the wired funds are limited.  It alleges only that RBx did not consent to making an investment "without receiving proper information as to the usage and expenditure of the funds, or without expectation of return" and, as a result, "Defendants illegally and without any lawful jurisdiction deprived [it] of its $275,000 investment." (Compl. ¶¶ 31-33.)  More information about the circumstances of RBx's alleged investment in Sniper and Defendants' alleged "lofty promises of returns" is required to state a plausible conversion claim.

C

To proceed with its unjust enrichment claim against Zeeshan Saeed[3], RBx must allege facts to show (1) benefits it conferred on him, (2) his appreciation of such benefits and (3) his acceptance and retention of such benefits under such circumstances that it would be inequitable for him to retain the benefits without payment of value.[4]  *Mitchell*

---

[3]   Defendants do not move to dismiss the unjust enrichment claim against Xorax.

[4]   The gist of the action doctrine does not bar RBx's unjust enrichment claim to the extent that it "sounds in quasi-contract – a contract implied in law . . . ." *Integrated Waste Sols., Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at *15 (E.D. Pa. Nov. 30, 2010) (holding unjust enrichment "does not apply to causes of action based upon implied or constructive contracts.") (citing *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007)).  However, for conduct that is ultimately shown to be governed by a valid contract it is not possible to recover for unjust enrichment. *See Gen3 Mktg. LEP v. Ella Paradis, Inc.*, No. 19-3498, 2020 WL 247528, at *3 (E.D. Pa. Jan. 15, 2020) ("Because an unjust enrichment claim is a "quasi-contract" claim, a party cannot recover on this claim when there is a valid contract") (citing *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007)).

*v. Moore*, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).  To determine whether RBx has stated a claim, the Court focuses on whether Zeeshan was enriched and, if he was, whether any enrichment is unjust – the most significant element.  *Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. Ct. 2008) (citing *Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. Ct. 1993)).  Unjust enrichment does not apply "simply because" Zeeshan "may have benefitted as a result of" RBx's actions.  (*Id.*)

RBx does not allege enough facts to plausibly show how Zeeshan was directly or indirectly enriched by its investment in Xorax.  The Complaint alleges Zeeshan solicited an investment on Xorax's behalf but fails to explain how any connection between Xorax and Zeeshan would have permitted Zeeshan to benefit from it.  It does not allege what, if any, benefits were conferred on Zeeshan and therefore whether or not it would be unjust or inequitable for him to retain them.

C

Because courts should freely give leave to amend a complaint when justice so requires, Fed. R. Civ. P. 15(a)(2), RBx may amend its claims against Reshan Saeed if it can allege facts to support the Court's exercise of personal jurisdiction.  It may amend its other dismissed claims if it is able to allege facts stating a plausible claim for relief.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.