# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RBX CAPITAL, LP,

          *Plaintiff,*

   v.

XORAX FAMILY TRUST,

          *Defendant.*

CIVIL ACTION
NO. 21-3774

**PAPPERT, J.**                                                              **May 8, 2023**

## MEMORANDUM

RBx Capital, LP sued the Xorax Family Trust and brothers Zeeshan and Rehan Saeed for breach of contract, conversion and unjust enrichment. After the Court's ruling on Defendants' Motion to Dismiss, (ECF 12), the only remaining claim is that for unjust enrichment against the Trust. Xorax now moves for summary judgment on the ground that it is a traditional trust, which, unlike a business trust, cannot be sued in its own name. The proper party to a lawsuit against a traditional trust is its trustee, here, Rehan Saeed. After carefully reviewing the record, considering the parties' submissions and holding oral argument, the Court grants the motion.

Analyzing the record's undisputed facts under the framework articulated by the Third Circuit Court of Appeals in *GBForefront v. Forefront Management Group*, 888 F.3d 29, 39 (3d Cir. 2018), and guided by the factors suggested in *North Hills Village LLC v. LNR Partners, LLC*, 479 F. Supp. 3d 189 (W.D. Pa. 2020), no reasonable jury could find that Xorax is a business trust.

1

I

The Xorax Family Trust was created in September of 2013.  (Deed of Tr. p. 1.)
Zeeshan Saeed arranged for the Trust's formation.  (Z. Saeed Dep. 17:10–11.)  His
father, Saeed Zafar Khan, acted as the settlor, funding the *res* with a single gold coin.
(Deed of Tr. p. 1.)  The Trust has four beneficiaries:  Zeeshan Saeed; Saeed Zafar Khan;
Zeeshan's mother, Perwin Saeed; and Zeeshan's minor daughter.  (*Id.* at § 1(b).)

Zeeshan Saeed and Dr. Razha Bokhari, the managing partner of RBx Capital,
knew each other as executives and board members of a company otherwise unrelated to
this case.  (Compl. ¶ 10, ECF 1-1.)  In August of 2020, Zeeshan allegedly convinced Dr.
Bokhari to wire $275,000 to the Trust for investment in a company called "Sniper."  (*Id.*
¶¶ 12–17.)  RBx, alleging that it never received any updates on the transaction nor a
return of the funds transferred, sued Xorax, Zeeshan and Rehan Saeed for breach of
contract, conversion and unjust enrichment.  (*Id.* ¶¶ 19, 22.)

Xorax moved to dismiss the Complaint under Federal Rules of Civil Procedure
12(b)(2) and 12(b)(6) for lack of personal jurisdiction over Rehan Saeed, failure to state
a claim against Rehan or Zeeshan Saeed, and failure to state a conversion claim against
Xorax.  The Court granted the motion, leaving only the unjust enrichment claim
against Xorax.

The record includes Xorax's Deed of Trust, (ECF 30-3); excerpts from the
depositions of Zeeshan and Rehan Saeed and Dr. Bokhari, (ECF 30-5, 30-6, 30-7, 31-1,
31-2, 33-3); and Zeeshan Saeed's Declaration (ECF 30-4).  Following oral argument,
(ECF 37), the parties submitted supplemental letter briefing and deposition excerpts,
(ECF 39, 40).

II

Summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 145 (3d Cir. 2004), *holding modified by Erdman v. Nationwide Ins. Co.*, 582 F.3d 500 (3d Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A fact is "material" if it may affect the outcome of the suit under the governing law. *Id.* A mere scintilla of evidence supporting the nonmoving party will not suffice for a court to deny summary judgment. *Id.* at 252. Rather, the nonmovant must "set forth specific facts showing there is a genuine issue for trial." *Id.* at 256. A court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms*, 579 F.3d 285, 286 (3d Cir. 2009). But it need not credit "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010). Nor may a court make credibility determinations or weigh the evidence. *See Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016).

"'When a legal standard requires the balancing of multiple factors, . . . summary judgment may still be appropriate even if not all of the factors favor one party,' so long as the evidence 'so favors' the movant that 'no reasonable juror' could render a verdict against it." *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015) (quoting *In re Enterprise Rent-A-Car Wage & Hour Emp't Pracs. Litig.*, 683 F.3d 462, 471 (3d Cir. 2012)).

III

A

Xorax contends that it is a traditional trust, which cannot be sued in its own name. Federal Rule of Civil Procedure 17(b)(3) provides that for parties other than individuals and corporations, capacity to sue or be sued is determined by the law of the state in which the district court sits. Under Pennsylvania law, a trust is not a juridical person. *See Lefta Assocs. v. Hurley*, 902 F. Supp. 2d 559, 575 (M.D. Pa. 2012); *Pa. R. Co. v. Duncan*, 5 A. 742, 746 (Pa. 1886).

In *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016), the Supreme Court distinguished "traditional trusts" from "business trusts," which, although called "trusts," are actually unincorporated entities. Unlike a traditional trust, a business trust can be sued in its own name. *GBForefront*, 888 F.3d at 39. Following *Americold*, the Court of Appeals for the Third Circuit identified two high-level differences between a traditional trust and a business trust: A traditional trust is a fiduciary relationship that "facilitates a donative transfer," whereas a business trust is a distinct legal entity that "implements a bargained-for exchange." *Id.* at 40. It also prescribed a two-step analysis for distinguishing the two. "First, the court ought to look

4

to the law of the state where the trust was formed to determine whether the trust has the status of a juridical person." *Id.* Second, the court must look to "the purpose of the trust" to determine if it facilitates a donative transfer or implements a bargained-for exchange. *Id.*

### B

Xorax's Deed of Trust was executed in Ontario, but by its terms is governed by the law of British Columbia. (Z. Saeed Decl. ¶ 3; Deed of Tr. ¶ 29.) The Court need not decide which is the place of formation, because in both provinces, a trust is considered a fiduciary relationship incapable of suing or being sued. *Compare Chambers v. HSBC Securities (Canada), Inc.*, 2003 CarswellOnt 3363 at para. 23 (Ont. S.C.J.) (Ontario law), *with Williamson v. Williamson*, 2020 BCSC 108 at paras. 25–26 (British Columbia law). The parties have not identified, and the Court has not found, law from either province distinguishing (or declining to recognize a distinction between) traditional and business trusts for the purpose of determining the proper party to a lawsuit.

### C

#### 1

In *North Hills Village*, the United States District Court for the Western District of Pennsylvania established a list of factors to consider in determining, under *GBForefront*'s second step, a trust's purpose. The *North Hills Village* court found *In re Dille Family Trust*, 598 B.R. 179 (Bankr. W.D. Pa. 2019), particularly helpful in its analysis of the traditional trust/business trust dichotomy.

*In re Dille* identified "two overarching elements of a 'business trust': (1) whether the trust was created for the purpose of transacting a business for profit and (2)

whether the trust has 'indicia of corporateness.'" *N. Hills Vill.*, 479 F.3d at 197 (citing

*In re Dille*, 598 B.R. at 193–94). "Those indicia include: '1. [t]he trust implements a

bargained-for exchange. . . . 2. [t]he trust is formed by a group of investors who

contribute capital to the enterprise with the expectation of receiving a return on their

investment. . . . 3. [t]he trust creates a continuity of the business enterprise uninterrupted by

death among the beneficial owners. . . . 4. [t]he trust permits the transfer of interests.'" *Id.*

*North Hills Village* considered these indicia of corporateness, and derived nine additional factors

from scholarship cited favorably by the Third Circuit in *GBForefront*:

1. Settlors in a traditional trust receive no compensation for the conveyance of the property into the trust, whereas the settlor in a business trust always receives payment for assets conveyed to the trust;

2. In traditional trusts, the settlor is seldom the sole or principal beneficiary;

3. In business trusts, the trust *res* consists of property originally contributed by the beneficiaries themselves;

4. Some business trusts vest title to the trust property in the trust as a legal entity, rather than in the trustees, as is the case with traditional trusts;

5. Business trusts typically refer to beneficiaries as "shareholders" or "members";

6. Members of a business trust can freely transfer their beneficial interests in the trust;

7. Members of a business trust can have the ability to elect, remove, or control the various trustees and amend the terms of the trust, which is ordinarily difficult or impossible in traditional trusts without the settlor's consent;

8. Settlors of a business trust almost always retain a residual interest in the trust *res* that remain after a business transaction is concluded, whereas the settlor of a traditional trust may or may not retain an interest; and

9. Business trusts feature centralized management, perpetual existence, and state registration requirements.

*Id.* at 198 (citing S.I. Strong, *Congress and Commercial Trusts: Dealing with Diversity*

*Jurisdiction Post-Americold*, 69 FLA. L. REV. 1021, 1037–40 (2017)). The list is not exhaustive,

nor is any factor determinative.  The ultimate question remains whether, based on the undisputed record evidence, the Court can determine as a matter of law that Xorax's purpose was to facilitate a donative transfer.

2

Forced to acknowledge that most of these factors do not favor its position, (Oral Arg. Tr. 42:21–43:13), RBx urges the Court to implement, and give the most weight to, a new "amorphous" consideration.  (*Id.* at 43:20–45:18.)  It argues that one of the Trust's beneficiaries, Zeeshan Saeed, engaged in too many "business activities" which swamps the other factors and makes the Trust a business entity.  (*Id.* at 73:4–8.)  RBx contends that in exchange for soliciting investment monies for the Trust, Zeeshan was receiving in return the "possibility that ultimately, he obtains the principal and/or interest of his investment."  (*Id.* at 46:13–14.)  The Deed of Trust permits "business activities," (*id.* at 34:10–13; Deed of Tr. § 7(w), (x)), and neither the Deed nor the record evidence suggests that Zeeshan's solicitation of investments was intended to generate a proportional return to him on his contributions.  Critically, Zeeshan's interest was entirely contingent on the trustee's unlimited discretion over whether to distribute Trust Property to beneficiaries, the share of the distribution each beneficiary would receive, and whether to make a distribution to one or more beneficiaries to the exclusion of the others.  (Oral Arg. Tr. 39:2–4; Deed of Tr. § 3.)  The "possibility" that Zeeshan at some point could obtain some, or even all, of the investment monies is entirely speculative and ignores that under the Deed of Trust, the trustee alone decides who gets what.  (Deed of Tr. §§ 3, 5.)

3

The first *North Hills Village/In re Dille* consideration is whether Xorax's purpose is to carry on a business for profit.  *N. Hills Vill.*, 479 F. Supp. 2d at 197 (citing *In re Dille*, 179 B.R.

at 199). RBx highlights the Deed of Trust's broad grant of power to the trustee to carry on any business and to form companies and trusts for investing Trust Property. (Deed of Tr. § 7(x), (w).) But reading the Deed of Trust as a whole, the trustee's business-related powers do not stand out from the many other broad grants of power and discretion given him. Moreover, one would expect a business trust to identify more specifically the business or type of business to be carried on, because the risk involved in the venture would be critical to the decision to invest in the first place. In other words, a business trust would be expected to memorialize the terms of the bargained-for exchange. Acknowledging that such specificity is absent from Xorax's Deed of Trust, RBx argues Zeeshan Saeed's actions show Xorax was created to carry on the business of soliciting investments. (Oral Arg. Tr. 51:6–52:3.) But Zeeshan's activities during the life of the Trust do not support an inference that carrying on such activity was the reason the Trust was created. Furthermore, as this factor relates to the ultimate question under the second *GBForefront* step, RBx admits that the record evidence does not show that Zeeshan directed the funds he solicited to Xorax in exchange for a vested benefit to himself, rather than as a donative transfer. (*Id.* at 52:6–24.) This factor does not support a finding that Xorax is a business trust.

The second *In re Dille* indicium of corporateness is whether the trust was formed by a group of investors who contribute capital with the expectation of receiving a return on investment. *N. Hills Vill.*, 479 F. Supp. 3d at 197 (citing *In re Dille*, 598 B.R. at 200). The parties agree this is not the case, so this factor favors finding that Xorax is a traditional trust. (Oral Arg. Tr. 18:2–19:3, 49:21–24.)

Business trusts, as distinct legal entities, often have perpetual existence and survive the beneficiaries' death. *See N. Hills Vill.*, 479 F. Supp. 3d at 197, 198 (citing *In re Dille*, 179 B.R. at 200; Strong, *supra*, at 1040). The parties agree that Xorax does

not have perpetual existence. (Oral Arg. Tr. 19, 50:1–5.)  It is set to terminate, at the latest, twenty-one years after its creation.  (Deed of Tr. § 1(d).)  RBx argues that this factor nevertheless favors finding that Xorax is a business trust because the death of one or more beneficiaries does not terminate the Trust.  *See* (Deed of Tr. § 5(f) (directing trustee, on Distribution Date, to distribute income from Trust Property "among such of the Beneficiaries as are living on the Distribution Date")).  While one or more of the beneficiaries dying may not terminate the Trust, the death of all beneficiaries does so. (*Id.* at § 1(d)(ii)).  This factor favors a finding that Xorax is a traditional trust created to preserve assets for family members.

Beneficiaries' interests in a business trust are generally freely transferable, "often through the issuance of certificates."  Strong, *supra*, at 1039; *N. Hills Vill.*, 479 F. Supp. 3d at 197 (citing *In re Dille*, 179 B.R. at 200).  The parties agree that the Deed of Trust prohibits any transfer of a beneficiary's interest in the Xorax Family Trust. (Deed of Tr. § 25; Oral Arg. Tr. 20:2–19, 50:6–9.)  This factor also favors a finding that Xorax is a traditional trust.

A settlor's transfer of assets into a traditional trust is gratuitous; a settlor in a business trust "always receives payment for assets conveyed to the trust."  *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1037).  The parties agree that Mr. Khan did not receive payment for his contribution of the single gold coin, (Z. Saeed Decl. ¶ 7; Oral Arg. Tr. 20:20–24, 50:10–16), so this factor weighs in favor of finding that Xorax is a traditional trust.

The settlor in a traditional trust "is seldom the sole or principal beneficiary."  *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1037).  Mr. Khan is one of

four beneficiaries, all of whom are undisputedly treated equally under the terms of the Deed of Trust.  (Deed of Tr. § 1(b); Oral Arg. Tr. 22:3–14, 50:17–21.)  This factor also favors finding that Xorax is a traditional trust.

A business trust's *res* consists of property originally contributed by the beneficiaries themselves.  *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1037).  There is no dispute that, other than the single gold coin contributed by the Settlor, all Trust Property was contributed or solicited by Zeeshan Saeed, a beneficiary.  (Z. Saeed Decl. ¶ 9; Z. Saeed Dep. 29:3–5; Oral Arg. Tr. 22:21–23:20, 58:13–19, 66:7– 14.)  Although this is not inconsistent with the funding of a business trust, it is neutralized by the fact that Zeeshan was the only of three non-settlor beneficiaries to make such a contribution.  Moreover, Zeeshan is not guaranteed a distribution proportional to his contribution—or any distribution, for that matter:  the Deed of Trust gives the trustee absolute discretion over distribution to beneficiaries, "notwithstanding that any Trust Property was contributed by any Beneficiary."  (Deed of Trust § 5; Oral Arg. Tr. 33:1–16, 46.)  This contingent interest is more consistent with a gratuitous transfer for the benefit of Zeeshan's minor daughter and parents than it is with a bargained-for exchange.

"Some business trusts vest title to the trust property in the trust as a legal entity, rather than in the trustees, as is the case with traditional trusts."  *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1039).  There is no dispute that the Trust Property is held in the name of the Xorax Family Trust.  (Z. Saeed Decl. ¶ 12; Oral Arg. Tr. 26:17–20.)  This factor favors finding that Xorax is a business trust.

Business trusts commonly refer to beneficiaries as "shareholders" or "members." *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1039). The parties agree there is no evidence in the record to suggest that the Xorax Family Trust's beneficiaries have ever been referred to as such. *See generally* (Deed of Tr.); *see also* (Oral Arg. Tr. 28:21–22; 59:21–25). This factor weighs in favor of finding that Xorax is a traditional trust.

"Members of a business trust can have the ability to elect, remove, or control the various trustees and amend the terms of the trust, which is ordinarily difficult or impossible in traditional trusts without the settlor's consent." *N. Hills Vill.*, 479 F. Supp. 3d 198 (citing Strong, *supra*, at 1039). The Xorax Family Trust is irrevocable, (Deed of Tr. § 24), and there is no provision permitting the beneficiaries to amend it. (Oral Arg. Tr. 28:6–12, 60:8–15.) RBx makes much of Zeeshan's designation as the alternate trustee, to succeed his brother in the event of Rehan's death or resignation. (*Id.* at 60:15–62:6; Deed of Tr. §§ 1(a), 14–15.) But beneficiaries of traditional trusts often serve as trustees, *see* Restatement (Second) of Trusts § 99, and such an arrangement is not comparable to the type of shareholder-like control commonly retained by beneficiaries of a business trust. *Cf. N. Hills Vill.*, 479 F. Supp. 3d at 199 (beneficiaries of business trust could veto trustee's transfer of trust property if less than two-thirds approved the action, and could amend the trust with unanimous consent of beneficiaries and trustee). Furthermore, the possibility that Zeeshan could become trustee and award himself the benefits of his contributions is speculative, and there is no evidence in the record that he would be more likely to act for his own benefit as trustee than for the benefit of his daughter.

RBx also argues that as the Trustee's brother, Zeeshan Saeed has the ability to control and influence the Trustee. (Oral Arg. Tr. 69:19–70:14.) It points to Rehan Saeed's deposition testimony that he had never "refused any instruction or request by [Zeeshan] concerning the transfer of money to Xorax Family Trust." (R. Saeed Dep. 29:10–15.) But there is nothing in the record to suggest that Zeeshan overrode or dictated Rehan's decisions as trustee, nor that he ever made a request that a trustee exercising independent judgment would have denied. The restrictions on Xorax's beneficiaries' control over the Trust and trustee are consistent with those found in traditional trusts.

"Settlors of a business trust almost always retain a residual interest in the trust *res* that remain after a business transaction is concluded, whereas the settlor of a traditional trust may or may not retain an interest." *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1040). The parties agree that Mr. Khan did not reserve an interest in the single gold coin, so this factor favors a finding that Xorax is a traditional trust. (Oral Arg. Tr. 28:22–24, 64:4–7.)

Centralized management and state registration requirements are characteristic of business trusts. *N. Hills Vill.*, 479 F. Supp. 3d at 198 (citing Strong, *supra*, at 1040). The parties agree the record shows "there is no centralized management. There's no management at all. . . . [E]verything is facilitated by and through the trustee. And we are completely unaware of any state registration requirements." (Oral Arg. Tr. 30:24–31:4; 64:8–13.) This final factor weighs in favor of finding that Xorax is a traditional trust.

Of these twelve factors, at least ten favor finding that Xorax is a traditional trust.  Only one factor—the manner in which trust property is titled—supports finding that Xorax is a business trust.  The remaining factor, beneficiary Zeeshan Saeed's contribution of the bulk of the trust *res*—is arguably neutral.  Even construing that factor in RBx's favor, the vast majority of the factors support a finding that Xorax is a traditional trust created to facilitate a donative transfer, and no reasonable jury could find otherwise.

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

13